That was nice. Oh, right. Good morning, may it please the Court. The Board determined that a person of ordinary skill would have been motivated to replicate the second signal of the two-signal invention of the 933 patent for three reasons. One, to save power, two, to save cost, and three, to supposedly enhance flexibility. I would like to emphasize today what I think the briefs and the record make plain, in that these are made-up reasons which are unsupported by any competent evidence, let alone substantial evidence. Hence, I think the Board's decision must be heard. Made-up reasons? Made-up in the sense that there's no factual or rational or logical underpinnings for these reasons, and I'd like to go through them if I may. Well, can you just start with the one I'm more interested in, which is it seems that even your expert conceded that there's some power savings would be achieved by the combination, right? My expert recognized that it was possible that there could be an immaterial power saving of a few millionths of a watt. But beyond that, our expert, Dr. Pedram, testified without refutation that no person of ordinary skill would have any motivation to combine the references to save a few millionths of a watt. That is, it's just not refuted. Did you? Dr. Davis didn't come back. Did you? I'm sorry. Thank you. I apologize. Did you dispute the PTAB's findings when it identified the two expressed benefits of combining Casamon with Allen and Breen, reduction in cost due to eliminating a conductor and improving flexibility resulting from allowing the same power supply to work with different devices? Yes. They didn't raise the cost issue until their reply brief before the PTAB. I contested it during oral argument, and I've cited the relevant transcript pages for that. Beyond that, beyond that, I'm sorry. Please do. Beyond that, as demonstrated in- No, no. I'm sorry. Please do cite the relevant transcript pages.  Mine is, but it's not saying much. Yes, Your Honor. I did dispute it. It's at page 11 of Kamarka's reply brief, appendix 1106 at 27,18 to appendix 1107 at 28,2. 1106, where, what line, I'm sorry? I'm sorry. Page 11 of Kamarka's reply brief, appendix 1106 at line, or excuse me, at page 27,18 to appendix 1107 at 28,2. The point I made during the argument is that you cannot eliminate a conductor in the cable, and we've established that, again, with that refutation from Apple, in our principal brief at pages 30 to 31, where, with reference to figure 4 of Allen, the wires between Allen's power detection circuit, 74, and Allen's AC identification circuit, 77 and 78, would have to be run, two wires would have to be run to the end of the conductor if you were going to make the substitution, or excuse me, move green's receiver responders to the end of the connector, as Apple argued. But I think it's pretty clear that you would add a wire if you did that. You wouldn't eliminate a wire, therefore there are no cost savings, and therefore, and therefore the reason. I'm going to say two things to you. Sure. First is, what I see here, at 27 and 28, at those lines, is purely attorney argument. But the second thing, more importantly to me, sitting up here, is what you're saying in front of me is not the same as what you say in pages 27 and 28. There's some overlap, but not much. Well, the problem was, your honor, they didn't raise the cost saving argument until the reply brief before the board. And they didn't even articulate it very much. So I feel, and I pointed it out in the principal brief, that we got a little bit snookered, but that's neither here nor there. I mean, I think the record establishes that there is no way that you could save money by eliminating a cable, excuse me, a conductor or a wire in the cable. It's not there. It's a made up reason. We also have the flexibility issue, and that raises, in my view, two paths, both of which have to end up in dead ends. On the one hand, Apple and the board say moving the conductor, or excuse me, the circuit from the power supply to the conductor would enhance flexibility. But I don't see how that enhances flexibility, as pointed out in the brief, if the cable is permanently attached to the power supply. There would be no reason to move the circuit from the power supply where it belongs to a conductor. You just can't enhance flexibility with a permanently attached cable. Then on the other hand, the other dead end is that if the cable is detachable and you put the circuitry at the end of the cable, well then you have what we call the mismatch problem because that cable can be put into different power supplies. It doesn't know what the power supply is, could give, would give, as Apple's expert Dr. Davis acknowledged, a wrong signal which could lead to hazardous operation. Apple takes the position, and maybe the board does too, that, well, that's just a tradeoff. On the one hand, we get flexibility. On the other hand, we have the potential for dangerous operation. I can't believe that the law would recognize such a tradeoff. And then the third point on the flexibility issue, which Apple clearly raised for the very first time. What's the legal authority for that statement, other than you can't believe it? What person of ordinary skill in the art having a choice between, oh, I can adopt an avenue which leads to fire or hazardous operation, as is the term of art in all the patents, or I can go for flexibility. I don't think that any person of ordinary skill in the art would opt for hazardous operation. And I can't believe that the law would recognize that sort of tradeoff for purposes of the in the obvious inquiry. I think I hit all my high points. That's perfectly fine. Why don't you save the rest of your time for later. Thank you, Your Honor. Good morning. And may it please the Court. The very first statement by appellant makes Apple's case here, and that is that the board found three different motivations. What Comarco wants to do is re-argue the case. They want this court to weigh the, in some cases, conflicting opinions of the experts and the arguments that were all considered in the final written decision and second-guess the board. And that, of course, isn't proper under the Substantial Evidence Test, which in some cases, not conflicting. And precisely, Your Honor, in some cases, there was no challenge to the proffered motivations. Let me try to just go directly to the points here, because I think they really determine the outcome of this appeal. First of all, the appellant's argument appears to be based almost entirely on this idea that Apple did not raise the cost savings motivation to combine the councilman location of the circuit until a reply brief. That's just not true. It is clearly stated at page 38 of the petition, which is page 524 of the appendix. The petition itself, in turn, cites to paragraph 97 of Dr. Davis's opinion, which is appendix page 601, wherein he cites for further support what is now appendix pages 393 and 396, which are the Castleman references. So with respect to Castleman, we don't simply have appellant asking this court to second-guess the board. The appellant's asking this court to second-guess Castleman. I've never seen any case when that would be appropriate. We take one of ordinary skill to be fully appreciating the disclosures of the prior art. And there's no dispute that Castleman itself, the prior art, describes the motivation to place the circuitry in the output connector. Where on 601 is the cost saving? Let's see if I have it. He's talking about design choice. I should be able to locate it. It is at the bottom of page 601 of appendix 601. In addition, Castleman provides a motivation to place the memory chip. Okay. Got it. So with respect to Castleman, we don't think there's a close call here at all. This isn't a case where there's even a challenge to an expert not having a basis. It's in the reference itself. The motivation is there. With respect to the Breen reference, again, and it was clear, I think, from appellant's presentation here this morning, that there is not a dispute that there would be some reduction in power. The magnitude of that reduction was in dispute, but the board acknowledges in detail in its final written decision that it weighed that. And it decided that even if all we had to go on in this case was the testimony of Dr. Davis regarding a power savings for replacing Allen's one-way signal with a call-and-response signal like Breen teaches, then it still would have a sufficient motivation to combine. But appellant hasn't even addressed the other issue that the board raised and, of course, we raised in our petition. This is the classic application of sort of the common sense test that KSR taught us. I've been practicing long enough, and I remember I had to point to this court or to the trial court to explicit teaching of motivation to combine. And in this case, we do believe we have it with respect to Dr. Davis. But, of course, KSR envisions a situation where one of ordinary skill confronted with two known options, and that's what Allen and Breen are. Allen and Breen not only are addressed to the idea of providing power to a mobile computing device, they're not only addressing the issue of how to solve the problem of letting that mobile computing device know the nature of the power supply, but they both have a solution, and they're only slightly different. Allen teaches a one-way constant communication of a signal so that the device knows the nature of the power supply, and Breen merely explains that, you know what, you can do this more efficiently and only send that signal when you're asked to do so by the device. That's the classic example of one of ordinary skill taking known options and applying them in a predictable manner. And I would submit that if it's not Allen and Breen, there would not be any combination that would meet that test. Unless the board has any other questions for me. Thank you. Thank you. On this, pardon me, on the cost saving issue, looking at page, I guess it was 601, was that what it was? Yeah, bottom of 601. They haven't articulated anything, and if you go and you look at Castleman, their main citation is to paragraph in Castleman, I think on column 16, but don't hold me to that, where it talks about when we're dealing with legacy devices, it may make sense to put a... Were you on notice when they said cost benefits associated? Yeah, but I didn't know what they were talking about. What I'm trying to say is if you look at the bottom of column 16, they're talking about... No, no, pardon me. When you say, yeah, but I didn't know what they were talking about. I said, were you on notice when they said cost benefits? And you give me a yes, but. But to me, it's the yes that matters. You were on notice. Yes, I suppose I was on notice. Was I apprised of what the argument was or what they were driving at? No. But if you look at Castleman on column 16, he's talking about cost benefits in the sense of if you have a legacy device, you save money by putting a memory chip in the end of the conductor as opposed to reopening up the device and putting the chip in there. That's not the argument they're making here or now. I have a hard time believing that Dr. Davis's testimony is confident. I mean, he flat out said, I made a guess. I didn't do any study. And I conclude that maybe you'd save a few thousand watts of power. A raid against that testimony of, if not an equally confident or better electrical engineer who says, even if you could save a few thousand or a few millions of watts, no person of ordinary skill in the art would do it. You're describing a classic circumstance where the trier effect weighs evidence. And then you're talking to an appellate court. But I don't see how Dr. Davis's testimony is evidence. He hasn't explained, he hasn't refuted Dr. Pedram's testimony. He disappeared. The best clue he had from Dr. Davis in his initial declaration was, well, it's a common sense that somebody would employ the receiver responders instead of the continually broadcasting circuits. Because, oh, you're going to say, you'll save power. How much power? And if we're going to have a flexible analysis of obviousness in light of concerns in the design community, the marketplace, et cetera, I think you have to take into the fact that if there's no gain foreseen or benefit to be realized, a person of ordinary skill in the art isn't going to take the time or spend the money or whatever to combine references unless he knows what the invention is. And in hindsight, we create an argument to combine the references. And I think that's exactly what has happened here. We've explained it with regard to the power saving issue. We've explained it with regard to the cost saving issue and with the evidence doesn't support those reasons. It's to the contrary. The evidence points to the fact that a person of ordinary skill would not have been motivated to replicate the invention. Any other questions? No. Thank you. Thank you very much for your time. Thank you.     Thank you. Thank you. Thank you. Thank you. Thank you.